No. 14-4522

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM GAZAFI,

Appellant.

*Appeal from the United States District Court for the
District of Maryland, Southern Division
Honorable Roger W. Titus, Senior District Judge*

BRIEF OF APPELLEE
UNITED STATES OF AMERICA

**Rod J. Rosenstein
United States Attorney**

**Thomas M. Sullivan
Assistant United States Attorney**

**6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
(301) 344-4433**

**November 3, 2014**        *Attorneys for the Appellee*

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION...........................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF FACTS ......................................................................2

    A.    The Criminal Conduct ...........................................................2

    B.    The Rule 11 Proceeding ........................................................8

    C.    Sentencing ..............................................................................9

        1. Statements by Victim Family Members........................10

        2. Defense Sentencing Argument......................................11

        3. Government's Sentencing Arguments ...........................11

        4. The Court's Sentencing Determination .........................12

SUMMARY OF ARGUMENT ...........................................................18

ARGUMENT ......................................................................................19

I.    THE DEFENDANT'S SENTENCE WAS PROCEDURALLY
    REASONABLE ...........................................................................19

    A.    Standard of Review .............................................................19

    B.    The District Court Made No Procedural Errors In Determining
        The Defendant's Sentence ...................................................20

i

C.    Even If The District Court Erred By Not Sufficiently Explaining The Reasons For The Sentence, The Error Was Harmless Because It Is Clear From The Record That A Remand For A Lengthier Explanation Would Not Lead To A Different Result ........................22

II.    THE DEFENDANT'S OVERALL SENTENCE OF 120 YEARS WAS SUBSTANTIVELY REASONABLE ................................24

A.    Standard of Review ............................................................24

B.    The Defendant's 120-Year Sentence For Crimes Involving The Production of Child Pornography Involving Five Victims Ranging In Age Between Five Months And Approximately Seven Years, Occurring Over The Course Of Approximately One Year, And Involving His Binding And Drugging Of Victims, Was Substantively Reasonable ....................25

CONCLUSION .........................................................................29

STATEMENT REGARDING ORAL ARGUMENT ...........................................30

CERTIFICATE OF COMPLIANCE ....................................................31

CERTIFICATE OF SERVICE ..........................................................32

ii

# TABLE OF AUTHORITIES

## CASES

*United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008)....................................25

*United States v. Boulware*, 604 F.3d 832, 839 (4th Cir. 2010) ..............................23

*United States v. Cobler*, 748 F.3d 570 (4th Cir. 2014).....................................*passim*

*United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) ..........................21

*Gall v. United States*, 552 U.S. 38, 51 (2007) ...............................................19, 20, 24

*Kimbrough v. United States*, 552 U.S. 85, 102 (2007) ............................................20

*United States v. Montes-Pineda*, 445 F.3d 375, 379 (4th Cir. 2006) ......................25

*United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011) ....................23

*United States v. Smallwood*, 525 Fed. Appx. 239
  (4th Cir. 2013) (unpub.).........................................................................15, 16, 21

## STATUTES

18 U.S.C. § 2251(a) ...................................................................................................2

18 U.S.C. § 3231 .......................................................................................................1

18 U.S.C. § 3553................................................................................................*passim*

18 U.S.C. § 3742.......................................................................................................1

## OTHER AUTHORITIES

Fed. R. Crim. Proc. 11 ..............................................................................................8

## STATEMENT OF JURISDICTION

The district court (Roger W. Titus, J.) had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. The defendant pled guilty to all six counts contained in the indictment, without a plea agreement, and the district court sentenced him to 1,440 months (120 years) of imprisonment, entering its judgment on July 1, 2014. JA 170. The defendant filed a timely notice of appeal on July 7, 2014. JA 177. This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

I.      Whether the defendant's sentence was procedurally reasonable, where the district court reviewed and considered the arguments of both the defendant and the government, considered all sentencing factors raised by the parties under 18 U.S.C. § 3553(a), and sentenced the defendant within the advisory guidelines range that was not in dispute.

II.     Whether the district court's 120-year sentence was substantively reasonable, where the defendant produced images and videos of child pornography involving five victims ranging in age between five months old and seven years old; where the defendant was a parent, relative, or legal guardian of all five victims; where he bound one of his victims' feet and ankles with handcuffs, hair ties, and head bands; and where the defendant administered an adult sedative to one of the

1

child victims in order to facilitate his crime.

## STATEMENT OF THE CASE

On September 11, 2013, a federal grand jury returned a six-count indictment charging the defendant, William Gazafi, with Sexual Exploitation of a Minor for Purpose of Producing Child Pornography, in violation of 18 U.S.C. § 2251(a). JA 11. Gazafi pled guilty to the indictment, without a plea agreement, on April 21, 2014. JA 7. On June 23, 2014, the district court sentenced him to 360 months' imprisonment as to Counts One through Four, to run consecutive to each other, and to concurrent sentences of 360 months' imprisonment on Counts Four and Five, for a total term of incarceration of 1,440 months (120 years), with each count to be followed by a period of lifetime supervised release. JA 170-76. This timely appeal followed.

## STATEMENT OF FACTS

### A.    The Criminal Conduct

On August 15, 2011, an undercover officer ("UC") communicated with a user with the screen name "Bill_James" on a chatroom dedicated to discussing incest. JA 179. During this chat, the defendant sent five images to the UC, none of which were child pornography, depicting prepubescent females clothed or in

2

various stages of undress.  JA 179.  The UC and the defendant did not have any

further contact until August 2012.   JA 180.

On August 22, 2012, the UC was contacted online via instant messaging by

an individual using the screen name "footfan_bill," later identified as the

defendant.  JA 180.  The following is a portion of the pertinent chat between the

UC and the defendant:

> **UC:** how long has it been for you since you had one
> young?
> **GAZAFI:** well last time I got to play with it was fairly
> innocent, about a month ago
> **GAZAFI:** buddy has two little girls aged 8mos and
> 18mos
> **UC:** mmmmmmmm
> **GAZAFI:** had about three hours alone while they went
> out to dinner and drinks
> **GAZAFI:** something so incredibly erotic about having
> your cock out in front of lil girls

JA 180.

On August 23, 2012, the UC was contacted online via instant messaging by

the defendant, who was using the screen name "footfan_bill."  JA 180.  During this

chat, the defendant told the UC, "I take private pics sometimes yeah but don't

share till I get to know someone better."  JA 180.

On April 29, 2013, the defendant, using the screen name "Bill_James,"

contacted the UC via instant messaging.  JA 180.  The defendant stated to the UC

3

that he had hardcore images available, but did not send any images to the UC on that occasion. JA 180.

On August 15, 2013, the UC was online in an incest predicated chatroom and engaged in a private online chat with the defendant, who again was using the screen name "Bill_James." JA 180. The following is the pertinent portion of the chat between the UC and "Bill_James," where they discussed the sharing of images:

> **GAZAFI**: dc area here, in MD
> **UC**: age?
> **GAZAFI**: im 41
> **UC**: my daughter is 12 and my gf daughter is 7 and we play, she is actually here with me now
>
> [* * *]
>
> **UC**: do you 2 play or just peeks
> **GAZAFI**: now its just naked, cuddling etc and play time after bedtime
> **UC**: nice
> **GAZAFI**: from 8mos to around 4 it was a bunch more
> **UC**: i have proof pics of mine you have any?
> **GAZAFI**: i do, but i typically dont share personal pics till ive talked to someone abit..too many take them and run
> **UC**: cool, ive noticed alot of fakes so lately i either go one for one or take a homemade pic with a message so others no im real
> **GAZAFI**: i can do the same or something for now.

JA 180.

4

The defendant sent the UC an image depicting two clothed prepubescent girls sitting on the floor of a playroom.  JA 181.  The defendant then sent the UC an image depicting the legs and feet of a child with ejaculate on the child's feet. JA 181.  The defendant then sent a third image, which depicted a prepubescent child lying on her stomach, legs apart, wearing underwear and a nightshirt.  JA 181.  The UC and the defendant then engaged in the following chat, where the defendant discussed his access to children, and the fact that he had given one of the children an adult sleeping aid:

> **UC**: you have any like that last, wow
> **GAZAFI**: whatcha mean?
> **UC**: cum pics
> **GAZAFI**: lots of cum pics on her feet yes
> **GAZAFI**: thats why ive lately been more active towards her bff that always comes over
> **GAZAFI**: if you dont want to mess with pics candid lil cam shots are fine too
>
> [* * *]
>
> **GAZAFI**: friend
> **GAZAFI**: like i said ive focused on her lately
> **GAZAFI**: when they have a sleepover if you are on ill show you her too
> **UC**: mmmmmmmmmmmmmmm
> **UC**: is she a hard sleeper to
> **GAZAFI**: oh yes
> **GAZAFI**: love it
> **UC**: i love that any more
> **UC**: mmmm
> **GAZAFI**: even gave her ambien once

5

JA 181.

The defendant then sent the UC a fourth image, which depicted a prepubescent female laying on her back, legs apart, wearing a pair of underwear with an adult male index finger moving the underwear aside to reveal the vagina of the prepubescent female. JA 181. The defendant and the UC resumed their chat after the defendant sent the image:

> **GAZAFI**: i have lots trust me
> **UC**: maybe 2 more pics each before we go
> **UC**: was that your cock or finger in the last one
> **GAZAFI**: finger
> **UC**: nice
> **GAZAFI**: gonna try and get her to take a whole ambien next time, maybe have lots of fun
> **UC**: you take those pics a while ago or recent
> **GAZAFI**: less than a year ago
> **UC**: nice
> **GAZAFI**: maybe we can work up to watching me cum on her friends feet while she sleeps

JA 181.

The defendant then sent two additional images to the UC. JA 182. The first image depicted a prepubescent female lying on her back, legs apart, wearing a pair of underwear pushed to the side, exposing her vagina. JA 182. The second image depicted a prepubescent female lying on her stomach, legs apart, wearing a pair of underwear with an adult male index finger digitally penetrating her vagina through the underwear. JA 181.

6

The images produced by the defendant and sent to the UC were sent by Gazafi from the State of Maryland to the District of Columbia and therefore traveled in interstate commerce.  JA 179.

Shortly after the August 15, 2013 chat, the defendant was identified and arrested.  JA 182.  During his arrest, agents seized numerous digital media items from his person, and these items were forensically examined.  JA 182.  Agents also executed search warrants at the defendant's residence.  JA 182.  A search of the defendant residence uncovered, among other things, computers, electronic storage media, a bottle of Ambien (a sleeping aid) prescribed to the defendant, a bottle of a generic sleep aid, a pair of handcuffs, and child-size lingerie.  JA 182.

A forensic examination of the digital media in Gazafi's possession when he was arrested uncovered numerous images and videos produced by the defendant. JA 182-83.  Those images and videos provided the basis for Counts One through Six of the Indictment:

- Count One: Images produced by the defendant between April 3, 2012, and April 7, 2012, depicting a prepubescent female restrained at the ankle with handcuffs, with her legs spread apart, and  bound with restraints on her ankles, to display her genitalia.  JA 11, 182.

- Count Two: One image produced by the defendant on or about June 16, 2012, which depicts a seven year old female lying on a bed, exposing her genitalia.  The focus of the picture is on the child's genitalia.  JA 12, 182.

7

- <u>Count Three</u>: Five images produced by the defendant on or about June 24, 2012, which depict a toddler female wearing underwear, as the defendant pulls back the underwear to expose her vagina.  JA 13, 183.

- <u>Count Four</u>: A video produced by the defendant on or about July 4, 2012, which depicts the defendant attempting to have a five month old baby masturbate him with her feet by placing his erect penis in front of the baby, who was naked from the waist down, and placing the baby's feet on his erect penis.  JA 14, 183.

- <u>Count Five</u>:  Videos and images produced by the defendant between August 4, 2012, and June 1, 2013, including a video file depicting the defendant using his feet to rub the buttocks of and expose the genitalia of a seven year old female.  JA 15, 183.

- <u>Count Six</u>: Two images produced by the defendant on April 14, 2013 and April 19, 2013, which depict the partial anal penetration of a toddler child by the defendant.  JA 16.

The defendant produced more images and videos of child pornography depicting vaginal penetration and the bondage and lascivious exhibition of prepubescent children, some of whom appeared to be unconscious in the images. JA 183.  A forensic examination of the digital media items seized from the defendant's residence yielded over 4,000 images of child pornography not produced by the defendant but downloaded from the internet.  JA 183.

### B.    The Rule 11 Proceeding

On April 21, 2014, the defendant pled guilty to the six-count indictment, without a plea agreement.  JA 40; *see* JA 38-70 (transcript of guilty plea hearing). In advance of the Rule 11 proceeding, the parties submitted letters detailing their

8

respective positions.  JA 19-24 (defendant's letter); JA 25-37 (government's

letter).  The government's letter contained an estimated advisory guidelines range.

JA 29-31.  The defendant's letter did not contain an estimated guidelines range.

At the Rule 11 hearing, the district court advised the defendant that the

crimes to which he was pleading guilty carried a minimum sentence of no less than

fifteen years and not more than 30 years, followed by a lifetime term of supervised

release.  JA 44.  The court also advised the defendant of the constitutional rights he

was waiving as a result of his plea to the indictment.  JA 45-49.

The district court also advised the defendant about the advisory nature of the

sentencing guidelines, and of their role, along with the role of the factors set forth

in 18 U.S.C. § 3553(a), in the imposition of sentence.  JA 51-57.  Gazafi then

admitted to the facts set forth in paragraph 6 of defense counsel's plea letter.  JA

21-23.  The court accepted the defendant's pleas of guilty, and set a date for

sentencing.  JA 68-69.

### C.    Sentencing

Sentencing was held on June 23, 2014.  JA 71-168.  The district court began

the hearing by inquiring whether the parties had any objections to the presentence

report.  JA 74.  The parties agreed that there were no objections to the report.  JA

74.  The parties further agreed with the probation officer's recommendation that

the defendant's adjusted offense level, after grouping all six counts, was 47, with a criminal history category of I. JA 74. The defendant objected only to "the stacking of the punishments" (consecutive sentences). JA 74.[1]

### 1. Statements By Victim Family Members

After the court advised the parties that it had reviewed the sentencing memoranda submitted by the parties, JA 75, the government presented five witnesses. JA 76-110. These witnesses told the court about the impact of these crimes on the lives of their children and on their families. *See, e.g.*, JA 77 ("This entire experience has been a living nightmare."); JA 80 ("I have witnessed first hand the horrendous impact both emotionally and financially that his behavior has had on this family."); JA 82 ("I'm not sure that the English language has enough words in it to describe the horrors that have been bestowed on my family and the impact to us."); JA 85 ("My family will never ever ever be the same. We will live the rest of our lives in fear that somebody will again hurt her or one of the other members of our family."); JA 87 ("The pain [defendant] has inflicted on me is a constant heaviness in the pit of my stomach. The regret and sorrow I feel for what happened to my girls adds to the weight. It's always there. It's been a soul-crushing experience for me and my family and I'm not sure how to get through

---

[1] Gazafi does not argue on appeal that the district court erred as a matter of law in running the sentences on Counts One through Four consecutive to each other.

10

it.").

One of the witnesses described to the court her concerns for the physical

damage likely caused by the defendant's drugging of one of his victims:

> [B]ecause he drugged her, she has to go through testing
> for her kidneys and her liver to make sure that there is no
> functional damage to them.  She's experienced short-
> term memory loss.  We're not sure if it's related, but it
> sure seems to be because she didn't have it a couple of
> years ago.

JA 83.

### 2.    The Defense's Sentencing Argument

After hearing from the government's witnesses, defense counsel addressed

the court.  JA 111.  Counsel requested a sentence of 30 years, citing three factors in

support of this sentence:  (1) the defendant's military service; (2) his

"extraordinary" acceptance of responsibility; and (3) his "rehabilitative potential."

JA 111-20.  The defendant then addressed the court personally in allocution.  JA

121-23.

### 3.    The Government's Sentencing Arguments

After the defendant addressed the court, the government presented evidence

about Gazafi's internet chats with the undercover officer.  JA 124-31.  These chats

described in graphic detail the defendant's desires to sexually abuse children.  JA

125, 344 ("something incredibly erotic about having your cock out in front of little

11

girls, isn't it?"); JA 345 ("so many hot sexy lil are feet and panty shots"; "hell ive [sic] even had to go into the restroom and jerk off a few times when there were so many sexy things."). These chats demonstrated the age range of the defendant's sexual interests in children: "ive [sic] no real limits that ive [sic] found." JA 336. During one of these chats, Gazafi distributed images of child pornography to the undercover officer. JA 126. The defendant also told the UC about giving one of the children a sleeping aid, JA 128 ("even gave her an Ambien once"), and about his intention to give the child victim a greater dose in the future: "gonna try and get her to take a whole ambien next time, maybe have lots of fun." JA 129.

The government also advised the court that the defendant possessed over 15,000 images depicting the rape and sexual abuse of children as young as newborns: "[The defendant] has pictures of infants right after they were born still containing the after birth [*sic*] on them." JA 141.

After addressing the relevant factors under 18 U.S.C. § 3553(a), including promoting respect for the law, JA 150, and general deterrence and protection of the public, JA 151, the government recommended a sentence of "no less than a hundred years." JA 154.

### 4. The Court's Sentencing Determination

After taking a five minute recess, the district court addressed the defendant.

12

JA 154. First, the court found that the defendant's offense level was 47, above and

beyond the guideline manual's sentencing table. JA 154. The court then

summarized the positions of the parties: the government was seeking a sentence of

1,200 months (100 years); the probation officer recommended a sentence of 720

months (60 years); and the defense was seeking a sentence of 360 months (30

years). JA 155.

The district court summarized its obligation to "impose a sentence that will

be sufficient, but not greater than necessary to comply with the purpose of

sentencing, which I'll address one by one in this case." JA 156. The court also

acknowledged that while it was required to properly calculate the advisory

guidelines range, the court would not give that range a presumption of correctness.

JA 156. The court then went on to address the applicable § 3553(a) factors.

First, the court addressed the nature and circumstances of the offenses,

observing that Gazafi's crimes were "perhaps the worst case of child pornography

that I've had the misfortune of coming into contact with." JA 158. Recognizing

that sentencing decisions must be made "on an individual basis," JA 158, the court

nonetheless found instructive this Court's observation about sentences received by

13

producers of child pornography.  JA 158.[2]

The court acknowledged the defendant's argument about his military career, and that it must take that military career into account.  JA 158.  The court found, however, that the defendant's military career constituted an aggravating factor, not a mitigating one:  "I think what's significant is that he used that military career and capacity to assist him in the commission of his heinous crimes" by "taking advantage of volunteering to watch people's children in connection with the military service."  JA 158-59.  The court further found that "whatever benefit [the defendant] gets by his military service is checked and then some by the fact that he used that military career in connection with the commission of his crime."  JA 159.

In addressing the history and characteristics of the defendant, the court found that, like many defendants charged with child pornography offenses, Gazafi had no criminal history, and that "[i]t is obvious that there is some demon inside [the defendant] that has caused him to become the sexual monster that he has become."  JA 159.

The district court, in addressing the seriousness of the offense, was "greatly aided" by the impact statements provided by relatives of the defendant's victims.

---

[2]  Although not explicitly stated by the district court at that time, the government believes the court was referring to this Court's then-recent decision in *United States v. Cobler*, 748 F.3d 570 (4th Cir. 2014).

14

JA 160; *see* JA 76-110 (testimony of victims' relatives).  In so doing, the court

found that the defendant's crimes caused their loss of happiness, well-being, and

"sense of security."  JA 160.  The court further found that the defendant's crimes

were "at the top of the scale of seriousness of offenses in the child pornography

arena, perhaps in all arenas."  JA 160.

The court then addressed the need for the sentence imposed to protect the

public from further crimes of the defendant, describing Gazafi's actions as an

"absolutely horrific series of crimes[.]"  JA 161.  The court found that considering

the protection of the public was "of the highest order in this case[.]"  JA 161.

The court went on to address the need to avoid unwarranted sentencing

disparities among defendants with similar records found guilty of similar conduct.

JA 161.  When addressing this factor, the court reviewed the cases cited in the

sentencing memoranda submitted by defense counsel.  JA 162.  In comparing this

defendant's crimes to another case handled by the same district judge, *United

States v. Smallwood*, 525 Fed. Appx. 239 (4th Cir. 2013) (unpub.), the court found

that comparing Smallwood's conduct with Gazafi's conduct revealed that the

latter's conduct warranted greater punishment:  "[I]n terms of trying to be faithful

to the goal of substantially similar sentences with people with similar records and

similar conduct that the Smallwood case would argue in favor of a substantially

higher sentence [for Gazafi] than [what] Mr. Smallwood received." JA 163.[3] In reviewing the other cases cited in the defendant's memorandum, the district court found that Gazafi's crimes were not comparable: "[A]ll of those cases are of lesser import than the grievous circumstances of this defendant's conduct in this case." JA 163.

Finally, the court found that the defendant's use of a sleeping drug to commit his crimes constituted another aggravating factor weighing in favor of a significant sentence: "To take a drug that shouldn't be used by people under 18 and use it on little toddlers is just beyond the pale." JA 164. In imposing sentence, the court addressed the concern that the defendant might someday be free in the community: "[The defendant's] conduct is of the most depraved that I've ever seen. And I have grave reservations about my ability to protect the public from somebody who is engaged in a persistent course of conduct like this as to whether he could ever be safely released to the community." JA 164.

The court then imposed sentences of 30 years on each count, with the

---

[3]   In support of the defendant's procedural unreasonableness argument, Gazafi's appellate counsel argues that the *Smallwood* case involved four victims. Def. Br. 18. That case, however, involved only one victim. Counsel's confusion likely rests in the district court's reference during sentencing to "this was four victims," JA 162, a reference to the known victims of *this* defendant's crimes, not Smallwood's. The reference in the following sentence, "[T]here was simply him taking picture with using his cell phone camera" was to Smallwood.

16

sentences for Counts One through Four to run consecutively to each other, and the

sentences for Counts Five and Six to run concurrently to Counts One through Four,

for a total sentence of 120 years.  JA 165.  The court then stated that it was going

to recommend that the defendant be placed in high-level security facility, "because

of his advance training in matters that might permit him to get his way out[,]" JA

165 — an apparent reference to Gazafi's military background, *see* JA 198-200,

213-47, 316-17, and a statement made at sentencing by one of the victim's parents

regarding the defendant's security clearance and his "above average technical

knowledge[.]"  JA 99.  The court imposed the mandatory $600 special assessment

and declined to impose a fine.  JA 167.

When asked by government counsel, the district court stated that it would

have imposed the same sentences, regardless of the advisory guidelines range:  "I

would have imposed the exact same sentence even if my guideline application is

wrong and there's just no circumstances under which I would impose a lesser

sentence in a case like this."  JA 168.  The court went on to say that the

defendant's conduct could have justified an even longer sentence: "I could

certainly have imposed all six of them at 30 years a piece consecutive, but I think

at some point the mathematics becomes impossible to even count."  JA 168.

17

## SUMMARY OF ARGUMENT

The defendant's overall sentence of 120 years was both procedurally and substantively reasonable.  The district court heard from both parties, and allowed defense counsel the opportunity to rebut the government's arguments.  The court considered the defendant's arguments that a sentence of only 30 years was appropriate, addressing each applicable factor under 18 U.S.C. § 3553(a).  The court explained in detail why a sentence of 120 years was sufficient, but not greater than necessary, to protect the public, and would fulfill the statutory goals of sentencing, including the nature and circumstances of the offense, the history and characteristics of the defendant, and the seriousness of the offense.

After considering the arguments from counsel as to an appropriate sentence, the court reasonably found that the factors cited by the government in favor of a significant sentence (based on the number of victims, the graphic abuse committed against children as young as five months old, the length of time of the defendant's crimes, his use of his military position to gain access to his victims, and his use of restraints and an adult sedative to commit his crimes), outweighed the defendant's arguments that his extraordinary acceptance of responsibility, his military service, and his potential for rehabilitation, warranted a lesser sentence.

18

# ARGUMENT

## I. THE DEFENDANT'S SENTENCE WAS PROCEDURALLY REASONABLE.

### A. Standard of Review

In reviewing a sentence, this Court first must ensure that the district court did not commit any "significant procedural error," such as failing to properly calculate the applicable guidelines range, failing to consider the 18 U.S.C. § 3553(a) factors, or failing to explain adequately the sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007).

In *Gall* and subsequent cases, the Supreme Court has set forth a multi-part procedure that sentencing courts should follow when imposing sentence. First, the court must correctly calculate a defendant's sentencing range under the now-advisory guidelines. *See id.* at 38 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). Improperly calculating the guidelines range is "significant procedural error." *Id.* at 39.

Next, the district court must allow "both parties an opportunity to argue for whatever sentence they deem appropriate." *Id.* at 49. After hearing argument, the court must then "consider all of the § 3553(a) factors," *id.* at 49, keeping in mind the "overarching provision instructing district courts to 'impose a sentence

19

sufficient, but not greater than necessary' to accomplish the goals of sentencing."

*Kimbrough v. United States*, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. §

3553(a)).  In so doing, the court "must make an individualized assessment based on

the facts presented" and cannot "presume that the Guidelines range is reasonable."

*Gall*, 552 U.S. at 50.

> **B.      The District Court Made No Procedural Errors In Determining The Defendant's Sentence.**

The 120-year sentence imposed by the district court was procedurally

reasonable.  There is no dispute as to the proper guidelines range applied by the

district court, as both the government and the defendant agreed that Gazafi's

adjusted offense level was the statutory maximum term of 360 months'

imprisonment as to each count.  JA 155.  Moreover, before imposing sentence, the

court addressed the following § 3553(a) factors: (1) the nature and circumstances

of the offense, JA 157-59; (2) the history and characteristics of the defendant, JA

157, 159; (3) the seriousness of the offense, JA 159; (4) promoting respect for the

law and affording adequate deterrence, JA 160; (5) protection of the public from

future crimes of the defendant, JA 160-61; (6) the need to provide educational or

vocational training, JA 161; (7) the kinds of sentences available, JA 161; and (8)

the need to avoid unwarranted sentencing disparities among defendants with

similar records found guilty of committing similar conduct, JA 161.

The sentencing transcript demonstrates that the district court addressed each of these factors individually (except for the "parallel goals" of respect for the law and deterrence, which were grouped together, *see* JA 160), and applied those factors to the specific circumstances of the defendant's crimes. The court's highly fact-specific analysis of the applicable § 3553(a) factors in this case is a far cry from a "rote statement," as Gazafi alleges. Def. Br. 10 (citing *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)). The court applied these factors to the particularly egregious facts of the defendant's crimes, as well as to the positive aspects of the defendant, such as his military career (a fact relied upon heavily by the defendant in support of a lesser sentence), and found that the defendant's military career was actually a factor that weighed in favor of a sentence significantly *greater* than the one sought by the defendant.

In determining what would constitute an appropriate sentence, the court also considered the cases cited by defense counsel in its "well-prepared sentencing memorandum." JA 162. In reviewing those cases, the court found the facts and circumstances of this defendant's conduct to be more egregious than the cases cited by defense counsel, including *Smallwood*, a case handled by the same district judge. JA 163. In particular, the court referred to *United States v. Cobler*, 748 F.3d 570 (4th Cir. 2014). Contrary to the assertions made in the defendant's brief,

21

the district court did not focus on the facts in *Cobler* (though it did question

defense counsel about the sentence imposed upon that defendant, who also had

pled guilty, *see* JA 115).  In light of the district court's thorough review of the

§ 3553(a) factors, and its analysis of the other cases cited by the parties on the

issue of an appropriate sentence, the record makes clear that the court's discussion

of *Cobler* was simply one factor in the sentencing analysis.

Moreover, the record demonstrates that the district court did not rely unduly

on *Cobler*, nor did it engage in a "rote statement" of the § 3553(a) factors.  The

court conducted a thorough review of the applicable § 3553(a) factors as they

applied to this defendant, taking into account sentences in other cases involving

similar conduct.  Taken as a whole, the court gave both the government and the

defense a full opportunity to present their arguments, considered those arguments

carefully, and articulated that consideration prior to imposing sentence.  The

defendant's sentence was, therefore, procedurally reasonable.

**C.     Even If The District Court Erred By Not Sufficiently Explaining The Reasons For The Sentence, The Error Was Harmless Because It Is Clear From The Record That A Remand For A Lengthier Explanation Would Not Lead To A Different Result.**

Even if the defendant is correct that the district court's findings were

somehow insufficient, such an error would be harmless because the district court

would have imposed the same sentence in any event.  Where a district court

22

commits a procedural error by failing to adequately explain its sentence, the reviewing court can look to the record to establish the process the district court undertook in fashioning the sentence to see if the court would impose the same sentence on remand. *See United States v. Boulware*, 604 F.3d 832, 839 (4th Cir. 2010); *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011) ("[I]t would make no sense to set aside [a] reasonable sentence and send the case back to the district court" where the district court would "impose exactly the same sentence.") (citation omitted).

In *Savillon-Matute*, a case in which the alleged procedural error was the miscalculation of the advisory guidelines range, this Court conducted an "assumed error harmlessness analysis," and affirmed the sentence imposed because: (1) the district court stated that its above-guidelines sentence was "absolutely" appropriate and this "consistent indication show[ed] that it would have reached the same result even if it had decided the guidelines issue the other way"; and (2) the sentence was substantively reasonable. *Id.* at 123-24.

The same analysis, applied here, leads to the same result. The district court listened carefully as defense counsel fully set forth the defendant's arguments for a sentence of 30 years. JA 111-20. After considering the defendant's arguments, the government's arguments, and the statements of the victims' family members, the

23

district court addressed numerous applicable § 3553(a) factors, and found that

those factors required a significant sentence, irrespective of the advisory guidelines

calculation.  The record makes clear that the court would have imposed the same

sentence regardless of the guidelines range:  "I would have imposed the exact same

sentence even if my guideline application is wrong and there's just no

circumstances under which I would impose a lesser sentence in a case like this."

JA 167-68.  There is no realistic possibility that the district court would come to a

different conclusion if the case were to be remanded for a lengthier explanation of

its reasoning under the § 3553(a) factors.  Thus, even if the court erred in not

explicitly rejecting the defendant's other arguments, the record provides sufficient

information for meaningful appellate review.  Because the record indicates that the

district court would impose the very same overall sentence on remand, and because

— as described below, the defendant's overall sentence was substantively

reasonable — any procedural error was harmless.

## II.   THE DEFENDANT'S OVERALL SENTENCE OF 120 YEARS WAS SUBSTANTIVELY REASONABLE.

### A.   Standard of Review

Once this Court has determined that a sentence is free of significant

procedural error, it considers the sentence's substantive reasonableness, "tak[ing]

into account the totality of the circumstances."  *Gall*, 552 U.S. at 51.  If the

24

sentence is within the appropriate advisory guidelines range, the Court presumes

that the sentence is substantively reasonable. *United States v. Abu Ali*, 528 F.3d

210, 261 (4th Cir. 2008). Such a presumption is rebutted only if the defendant

demonstrates "that the sentence is unreasonable when measured against the

§ 3553(a) factors." *United States v. Montes-Pineda*, 445 F.3d 375, 379 (4th Cir.

2006) (internal quotation marks omitted).

> **B.** **The Defendant's 120-Year Sentence For Crimes Involving The Production of Child Pornography Involving Five Victims Ranging In Age Between Five Months And Seven Years, Occurring Over The Course Of Approximately One Year, And Involving His Binding And Drugging Of Victims, Was Substantively Reasonable.**

The circumstances of Gazafi's crimes, coupled with a consideration of the

relevant sentencing factors, support the district court's overall sentence of 120

years. The indictment and statement of facts admitted by the defendant, under

oath, at his guilty plea proceeding sufficiently detail the heinousness of his crimes.

In addition, the government submitted evidence to the district court that

demonstrated the full gravity of the defendant's crimes. In addition to the crimes

contained in the indictment, the defendant distributed child pornography to at least

seven different individuals. JA 194-95. He also received child pornography from

five producers of child pornography (images never seen before by law

enforcement, JA 295), and was communicating with producers of child

pornography.  JA 140.

A review of the defendant's collection of child pornography also supports a 120-year sentence.  Submission of the defendant's collection of child pornography to the National Center for Missing and Exploited Children revealed that the defendant possessed 2,083 image files and 117 video files depicting known, identified children.  JA 401, 403.

The defendant produced child pornography with infants as young as five months old.  JA 183.  Moreover, he used his military career as a subterfuge to gain the trust of colleagues and members of his community to entrust their young and infant children to his care.  JA 99.  When they did, the defendant violated that trust in the worst way humanly imaginable: he sexually abused those children, photographed and videotaped his sexual abuse, distributed child pornography, and received child pornography from others.  And he placed one of his victims at significant risk of serious physical injury or death, by administering a sleeping aid. This defendant's unspeakable actions, taken as a whole, put him in an exclusive class of defendants.

Comparing this defendant's crimes to those committed by the defendant in *United States v. Cobler*, 748 F.3d 570 (4th Cir. 2014), supports the substantive reasonableness of the district court's overall sentence.  In *Cobler*, the defendant

26

victimized one child.  Here, Gazafi victimized five children.  And while it is true that one possible distinguishing factor in *Cobler* was that the crimes in that case "could have caused the child to contract Cobler's serious communicable disease," *id*. at 580, that risk was a serious aggravating factor roughly analogous to this defendant's drugging of his victim with an adult sleeping aid, which could have led to serious physical injury or death for the victim.

While the reasonableness of a defendant's sentence should not be wholly dependent on the number of victims, on its face, this Court's decision upholding Cobler's 120-year sentence supports the government's argument that Gazafi's overall sentence was substantively reasonable.  Here, the defendant's crimes are more serious than Cobler's, given the number of victims, his abuses of his military status, and his use of sleeping medication on his victims.  While the district court and this Court should consider these factual distinctions when determining the appropriateness of the defendant's sentence, it seems clear that the facts of the defendant's case are more egregious.

First, Gazafi produced child pornography involving at least five victims.  The fact that he had the ability to commit his crimes with five different victims shows him to be a greater risk to the community.  This defendant was able to manipulate several families to entrust their children to his care.

27

Gazafi increased not only the demand for child pornography (by receiving it from others), but also the *supply* of child pornography available in the world, at the expense of the lives of at least five young children. In the process, he caused grave damage to these children, including possible long-term memory loss for one of his victims, JA 83, and immeasurable heartache to the loved ones of these child victims, as expressed in their statements to the court at sentencing.

Second, Gazafi's crimes involved using his military status to lure trusting parents to allow him to babysit their children. This allowed the defendant to gain access to children where another abuser of children might not have had such access. Once those children were within his custody and control, Gazafi produced images and videos of unspeakable abuse, with children as young as five months old. For one of his older victims (seven years old), the defendant administered a sleeping aid, and then bound the female victim in handcuffs and hair ties, and took pictures of her. By administering an adult sleep aid to a child, the defendant subjected that child to risk of serious physical injury or death, a greater risk than the awareness of possibly transmitting a "serious communicable disease" as describe in *Cobler*. 748 F.3d at 573. Here, one of the defendant's victims may face long-term physiological damage as a result of being drugged. *See* JA 83. This factor alone puts the defendant's crimes within the category of the most

28

serious crimes that one could commit, much less commit against a child.

When one views these factors in combination — Gazafi's significant child pornography collection; the violent nature of that collection; the number of victims; the graphic nature of the defendant's sexual abuse; his distribution of images on the internet; his misuse of his military position to lure his victims; and the drugging and binding of his victims — it is clear that the district court acted reasonably in fashioning an overall sentence of 120 years.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:   /s/      *Thomas M. Sullivan*
Thomas M. Sullivan
Assistant United States Attorney

6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770

November 3, 2014

29

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The United States respectfully suggests that oral argument is not necessary in this case.  The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## CERTIFICATE OF COMPLIANCE

1.      This brief has been prepared using Microsoft Word, Times New Roman,

14 Point.

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table

of citations; statement with respect to oral argument; any addendum

containing statutes, rules, or regulations, and the certificate of service, the

brief contains 6,364 words;  I understand that a material misrepresentation

can result in the Court's striking the brief and imposing sanctions.  If the

Court so directs, I will provide an electronic version of the brief and/or a

copy of the word or line print-out.

                                                            /s/ *Thomas M. Sullivan*
                                                            Thomas M. Sullivan
                                                            Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 3, 2014, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will send

notice of such filing to the following registered CM/ECF user:

Meghan S. Skelton, Esq.
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770

/s/ *Thomas M. Sullivan*
Thomas M. Sullivan
Assistant United States Attorney

32